AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Richard Kessler | ) | Case No.  21mj179 |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___1/1/2014 through 12/31/2017___ in the county of ___Bernalillo___ in the
___ District of ___New Mexico___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7203 | Willful failure to file return, supply information, or pay tax |
| 18 U.S.C. § 1957 | Engaging in monetary transactions in property derived from specified unlawful activity |
| 18 U.S.C. § 1341 | Frauds and swindles - mail fraud |
| 18 U.S.C. § 1343 | Fraud by wire, radio, or television |

This criminal complaint is based on these facts:

During calendar years 2014, 2015, 2016 and 2017, Richard Kessler received gross income in excess of the minimum filing requirement.  By reason of such gross income, he was required by law to make an income tax return to the Internal Revenue Service but willfully failed to file individual income tax returns for those years. In addition, he obtained money from individuals to invest in retirement accounts on their behalf but used the money for other purposes instead.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Szilvia Scroggins, Special Agent IRS-CI
*Printed name and title*

Electronically submitted and telephonically sworn to me.
~~Sworn to before me and signed in my presence.~~

Date: ___February 5, 2021___

_____
*Judge's signature*

City and state: ___Albuquerque, NM___

Kirtan Khalsa United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Szilvia Scroggins, being duly sworn, hereby declare and state the following:

## I.      INTRODUCTION

1.   I am a Special Agent with the United States Department of the Treasury, Internal
Revenue Service Criminal Investigation (IRS-CI) and have been so employed since
July 2008.  As a special agent, my duties and responsibilities include conducting
investigations of individuals and business entities that have allegedly violated Federal
criminal laws of the United States Code including:

    a.   Title 26 of the United States Code (Internal Revenue Code)

    b.   Title 18 of the United States Code (Money Laundering and other Federal Crimes)

    c.   Title 31 of the United States Code (Bank Secrecy Act).

I earned a Master of Business Administration Degree in Financial Management from
the University of New Mexico.  Prior to becoming a special agent, I was employed at
Ameriprise Financial, Inc. (formerly American Express Financial Advisors, Inc.) for
seven years.

2.   While employed with IRS-CI, I attended the Criminal Investigator Training Program
and the IRS Special Agent Basic Training at the Federal Law Enforcement Training
Center, which included detailed training in conducting financial investigations.  I have
conducted investigations that involve individuals who committed tax evasion,
materially misstated items on their personal income tax returns or business returns, and
prepared false returns in order to defraud the government.

3.   The information contained in this affidavit is based on the following information: my
personal knowledge and observations made during the course of this investigation;

Affidavit of Special Agent Szilvia Scroggins
in support of Criminal Complaint                                             1

correspondence and documents received from third party record keepers; and my

review of records obtained during this investigation, including, but not limited to,

Federal tax returns and other records maintained by the IRS and various public records.

I have personally participated in the investigation of the commission of the offenses

alleged in this affidavit and am familiar with the circumstances of the offenses

described in this affidavit.

4.    The information contained in this affidavit is based on my personal knowledge and

information I have gathered from other sources as noted throughout this affidavit.  This

affidavit does not purport to set forth all of my knowledge or efforts with respect to the

investigation of this case.

5.    The information contained in this affidavit is submitted for the limited purpose of

demonstrating probable cause for a criminal complaint and arrest warrant against

Richard Kessler (Kessler) for failing to file Federal income tax returns for tax years

2014 through 2017 in violation of Title 26 U.S.C. § 7203 and for violating Title 18

U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud) and 1957 (money laundering).

6.    It is a violation of Title 26 U.S.C. § 7203, for any individual who is required to file a

federal income tax return, to willfully fail to file such a return.  Based on the facts set

forth in this affidavit, there is probable cause to believe Kessler committed violations of

Title 26 U.S.C. § 7203 for tax years 2014 through 2017 by willfully failing to file

personal and business income tax returns.  There is probable cause to believe Kessler

defrauded his clients violating Title 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire

fraud), and there is probable cause to believe that Kessler engaged in transactions with

proceeds of those frauds in violation of 18 U.S.C. § 1957 (money laundering).

7.  Title 26 U.S.C. § 6531 provides:

> Where a complaint is instituted before a commissioner of the United
>
> States within the period above limited, the time shall be extended until
>
> the date which is 9 months after the date of the making of the complaint
>
> before the commissioner of the United States.

## II.    INVESTIGATION BACKGROUND

8.  Kessler operated as a financial advisor/investment broker under the business name
    Guardian Group Investments LLC (GGI).  Kessler registered the entity with the office
    of the New Mexico Secretary of State in October 2008.  Kessler was a securities broker
    prior to being banned from the industry in 2018.

9.  During the pertinent tax years, GGI had one business savings account that routinely
    received client funds, which is specifically prohibited by New Mexico securities
    regulation rules.  Kessler has acknowledged that fact in an interview with regulators.
    He knows he is not supposed to take custody of client funds.  Despite several warnings
    from regulators in 2015, Kessler continued transferring client funds into his business
    account throughout 2016.  These client funds then were either converted to cashier's
    checks, wire transferred to the benefit of other clients or withdrawn in cash.  Matching
    cash withdrawals from the business account and deposits in identical amounts into
    Kessler's personal checking account have been identified.

10. Kessler did not report or pay tax on any of his legitimate commission income or on any
    of the ill-gotten gains he diverted from the employer sponsored retirement plans of his
    clients to his personal benefit.  The computation of unreported income in this affidavit

includes his commissions for all prosecution years as well as the client funds he

diverted for his personal use during tax year 2016.

11. Following an examination by the Compliance Bureau of the New Mexico Regulation

and Licensing Department (RLD) Securities Division, Kessler was issued an Order to

Cease and Desist due to improper business practices.  The RLD Compliance Bureau

identified several deficiencies and referred the matter to their Enforcement Division.  A

subsequent referral was forwarded to IRS CI.

### III.        FACTS SUPPORTING TAX CHARGES

12. The Internal Revenue Code sets forth the persons who are required to file federal

income tax returns.  The legal requirement to file an income tax return is generally a

function of the taxpayer's gross income, filing status and age.  The statutory minimum

filing requirement varies from year to year.  The table below outlines the amount of

gross income Kessler must exceed in order to be required to file a Federal income tax

return.  The head of household filing status was used for all of the tax years.

| TAX YEAR | STATUTORY FILING REQUIREMENT | RICHARD KESSLER's GROSS INCOME |
|----------|------------------------------|--------------------------------|
| 2014 | $13,050 | $129,055 |
| 2015 | $13,250 | $89,621 |
| 2016 | $13,350 | $170,766 |
| 2017 | $13,400 | $57,483 |

13. There is no record of any Form 1040, *U.S. Individual Income Tax Return* (Form 1040),

being filed for Kessler for tax years 2014 through 2017.  There has not been any

business tax return filed for GGI for any tax year since the establishment of the

company in 2008.  Kessler had previously reported his business income from GGI on

Form 1040 Schedule C.

Affidavit of Special Agent Szilvia Scroggins
in support of Criminal Complaint                                    4

14. Kessler misdirected his clients' investment funds for his personal benefit in 2016 in the amount of $97,481.35.  This amount is added to the commissions table below to compute his total gross income.

15. During 2014 through 2017, Kessler earned commissions detailed in the table below and did not report any of that income to the Internal Revenue Service.

| Payer | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|
| Gilbert Arevalos | $100 | $1,043 | - | - |
| Sundance | $9,802 | $10,114 | $9,833 | $7,002 |
| Transamerica | $7,072 | $7,347 | $5,985 | $1,445 |
| BMO Dugan | $12,529 | $13,545 | $17,542 | $4,972 |
| BMO Sheet Metal | $5,162 | - | - | - |
| Overeaters Anonymous | $2,400 | $3,000 | $5,000 | $4,167 |
| Beneco | $4,831 | $4,308 | $8,337 | $4,643 |
| Equity Trust Company | - | - | - | $8,172 |
| Allianz Life Insurance Company | $79,721 | $40,259 | $15,937 | $15,660 |
| Fidelity Investments | $6,214 | $9,037 | $9,764 | $10,898 |
| Great-West Retirement Services | $1,224 | $968 | $887 | $524 |
| **Total Unreported Gross Receipts** | **$129,055** | **$89,621** | **$73,285** | **$57,483** |

16. As a result of Kessler's failure to file returns, there is substantial tax due and owing for tax years 2014 through 2017.  The total amount of Kessler's criminal tax liability is $82,627 plus interest and penalties. The table below outlines the yearly figures, not including interest and penalties.

| | |
|---|---|
| 2014 | $29,095 |
| 2015 | $14,794 |
| 2016 | $32,995 |
| 2017 | $5,743 |

17. During 2014 through 2017, Kessler used two business bank accounts in the name of GGI at Sandia Laboratories Federal Credit Union (SLFCU) to receive his commissions and to conduct financial transactions.  Kessler opened a personal checking account at Wells Fargo Bank (WFB) in 2015.  The overwhelming majority of deposits into the

WFB account were ATM or teller cash deposits.  Matching cash withdrawals from his SLFCU business savings account have been identified for most of these cash deposits. Selected transactions are discussed below as they relate to Kessler's scheme to defraud four of his clients.

a.  On March 4, 2016 a retirement distribution check in the amount of $25,796.30 made payable to Guardian Investments F.B.O. John Doe 1 (name changed for privacy) was deposited into GGI's SLFCU non-qualified, business savings account.  The funds were supposed to be moved into another qualified investment (IRA) on behalf of John Doe 1.  However, funds in John Doe 1's name were not wired to a new investment to Allianz Life Insurance Company until August 26, 2016 in the amount of $25,296.30 after a $20,000 deposit was obtained from another victim, John Doe 4 (discussed below).  By then, however, it was too late to invest in an IRA and the account was set up as a Roth IRA, unbeknownst to John Doe 1 until recently.

b.  On March 8, 2016, Kessler made a cash withdrawal of $10,000 from his SLFCU account.  On the same day, there are four ATM cash deposits totaling $10,000 into his WFB account.  On March 9, 2016, Kessler made a cash withdrawal of $4,000 from his SLFCU account.  There is a corresponding $4,000 cash deposit into his WFB account on the same day.

c.  On March 15, 2016, Kessler purchased a cashier's check in the amount of $5,000 payable to child support enforcement.  On March 16, 2016, Kessler purchased a cashier's check in the amount of $2,000 payable to child support enforcement. On March 24, 2016, the Order of the Second Judicial District Court noted "Father

presented evidence that he paid $5,000.00 in Child Support arrears on 3/15/16 and $2,000.00 in Child Support arrears on 3/16/16." The funds were withdrawn from Kessler's SLFCU business savings account.

d.   On April 29, 2016, a retirement distribution check in the amount of $13,150.27 made payable to Guardian Group Investments FBO John Doe 2 was deposited into GGI's business savings account.  The money was supposed to be moved into another qualified investment (IRA).  On May 9, 2016, three checks in the amounts of $5,349.62, $12,221.07, and $16,760.39 were deposited into GGI's business savings account.  These funds were also to be moved into another qualified investment (IRA).  None of this money has been transferred on behalf of or refunded to John Doe 2 as it was diverted for Kessler's benefit.  John Doe 2 gave all four checks to Kessler at the same time and does not know why Kessler deposited one check first, then the rest of them.

e.   On May 12, 2016, Kessler purchased a cashier's check, drawn on his SLFCU account, in the amount of $20,000 payable to That Car Place, a used car dealership in Albuquerque, New Mexico.  Kessler made a down payment on a 2012 Toyota Tundra pickup truck.

f.   On August 2, 2016, a check in the amount of $30,000.00 made payable to Guardian Group Investments FBO John Doe 3 IRA was deposited into GGI's business savings account.  The money was supposed to be moved into another qualified investment (IRA).  None of this money has been transferred on behalf of or refunded to John Doe 3 as it was diverted for Kessler's benefit.

g.  Two days after the John Doe 3 check deposit, on August 4, 2016, Kessler made a cash withdrawal of $13,270 from his SLFCU account and deposited an identical amount into his WFB account. On the same day, Kessler directed a wire transfer for the benefit of another client, in the amount of $12,372.68.

h.  During the month of August 2016, Kessler's expenditures from his WFB account following the $13,270 cash deposit included travel and hotel charges in Las Vegas, Nevada and along the coast of California, rent payment of $1,350, child support payment of $1,520.68 as well as customary living expenditures including convenience stores, car wash, barber, restaurants, movie theater, urgent care, fitness club, etc.  There were no other deposits during the month of August 2016 other than a $15 purchase return from Allegiant Travel; expenditures for the month totaled $13,690.05.

i.  On August 23, 2016, a check in the amount of $20,000 made payable to Guardian Group Investment from John Doe 4 was deposited into GGI's business savings account.  The money was supposed to be moved into another qualified investment (IRA).  None of this money has been forwarded for John Doe 4's benefit as it was used to repay John Doe 1 via a new Allianz Life Insurance Company contract issued on September 6, 2016 and discussed above.

18. The four victims have been interviewed and their testimony reveals none of them were aware Kessler removed their retirement funds from a qualified status (401k or IRA) and was using their money to fund his lifestyle.  The table below outlines the misappropriated client funds for the four clients:

| Date of Deposit | Amount | Client |
|---|---|---|
| 03/04/2016 | $ 25,796.30 | John Doe 1 |
| 04/29/2016 | $ 13,150.27 | John Doe 2 |
| 05/09/2016 | $   5,349.62 | John Doe 2 |
| 05/09/2016 | $ 12,221.07 | John Doe 2 |
| 05/09/2016 | $ 16,760.39 | John Doe 2 |
| 08/02/2016 | $ 30,000.00 | John Doe 3 |
| 08/23/2016 | $ 20,000.00 | John Doe 4 |
|  | **$123,277.65** |  |

## IV.  ADDITIONAL FACTS SUPPORTING TITLE 18 CHARGES

19. Prosecution of 18 U.S.C. § 1957 requires proof of four elements: (1) knowingly engage

    or attempt to engage in a monetary transaction; (2) knowledge that the property

    involved in the monetary transaction is from criminally derived property; (3) property

    involved is of a value greater than $10,000; and (4) property involved in the monetary

    transaction is derived from specified unlawful activity.

20. Additional facts supporting a charge of transactional money laundering include the

    following:

    a.  On May 12, 2016, Kessler purchased a cashier's check in the amount of $20,000

        and used it for the down-payment towards a vehicle purchase.

    b.  On August 4, 2016 Kessler directed a wire transfer in the amount of $12,372.68

        for the benefit of a client whose investment funds Kessler had previously used for

        customary living expenditures.

    c.  On August 4, 2016, Kessler made a cash deposit into his personal Wells Fargo

        Bank account in the amount of $13,270 after withdrawing the exact cash amount

        from GGI's business savings account.

    d.  On August 26, 2016, Kessler directed a wire transfer in the amount of $25,811.30

        to Allianz for the benefit of John Doe 1 from GGI's business savings account.

e.  Kessler was aware he was not supposed to take custody of client funds.  Kessler successfully passed the General Securities Representative Examination (Series 7) on January 12, 2005.  The Series 7 exam is intended to safeguard the investing public by helping to ensure that General Securities Representatives are competent to perform their jobs.  Among the several different sections, three "knowledge statements" are particularly relevant to establishing Kessler's knowledge regarding the treatment of client funds: K4 – knowledge associated with appropriate business conduct, providing customers with information on investments and making suitable recommendations; K6 – professional conduct and ethical considerations; and K15 – retirement plans and other tax advantaged accounts.

f.  The monetary transactions greater than $10,000 using fraudulently obtained funds are listed in the table below:

| Date | Amount | Transaction |
|---|---|---|
| May 12, 2016 | $20,000.00 | Cashier's check purchase for vehicle |
| August 4, 2016 | $12,372.68 | Wire transfer to client |
| August 4, 2016 | $13,270.00 | Cash deposit into personal account |
| August 26, 2016 | $25,811.30 | Wire transfer to client |

21. Additional facts supporting mail and wire fraud charges include the following:

a.  On February 26, 2016, John Doe 1, at Kessler's direction, instructed OneAmerica Financial Partners, Inc. (OAFP) to liquidate John Doe 1's qualified IRA account held with OAFP.  OAFP is an Indiana company and the request was made via interstate phone call.  Although Kessler was not the investment advisor on John Doe 1's OAFP account, he assisted John Doe 1 with the distribution request, directing OAFP to send the check to Kessler's residence address.

Affidavit of Special Agent Szilvia Scroggins
in support of Criminal Complaint                                                                    10

b.  Four checks dated April 5, 2016 were delivered by mail service to Kessler's personal residence address, the funds coming from John Doe 2's qualified IRA accounts held at OppenheimerFunds Services (OFS).  Although Kessler was not the investment advisor on John Doe 2's OFS accounts, he assisted John Doe 2 with the distribution request, directing OFS to send the four checks to Kessler's residence address.

c.  Kessler misled OFS when he stated he had established a qualified IRA account with GGI for John Doe 2 in a Letter of Acceptance faxed to OFS on March 27, 2016.

d.  The cashier's check purchase on May 12, 2016 referenced above was derived from a specified unlawful activity, that is, mail fraud.  On May 9, 2016, Kessler deposited three of the four John Doe 2 checks received via mail, into GGI's business savings account.  The total amount of the three checks was $34,331.08.

e.  The wire transfer and cash deposit transactions on August 4, 2016 referenced above were derived from a specified unlawful activity, that is, mail fraud.  Kessler assisted John Doe 3 with the withdrawal request from his Dugan Production retirement account and instructed him to go to his financial institution to obtain a cashier's check made payable to GGI, after John Doe 3 received his distribution check, which was mailed to his home addresses.

f.  The wire transfer on August 26, 2016 referenced above was derived from a specified unlawful activity, that is, mail fraud.  John Doe 4 mailed the $20,000 cashier's check to Kessler's address according to Kessler's instructions.  This cashier's check – along with what remained in Kessler's account from the John

Doe 3 cashier's check – funded the wire transfer to Allianz for the benefit of John
Doe 1.

g.  Kessler assisted John Doe 4 with the withdrawal request from his Dugan
Production retirement account and instructed him to go to his financial institution
to obtain a cashier's check made payable to GGI, after John Doe 4 received his
distribution check, which was mailed to his home addresses.

_____
Szilvia Scroggins, Special Agent
Internal Revenue Service
Criminal Investigation

Electronically submitted and telephonically sworn to me.
~~Subscribed and sworn to before me~~

This ___5th___ day of February, 2021.

_____
HONORABLE JUDGE Kirtan Khalsa
United States Magistrate Judge

Affidavit of Special Agent Szilvia Scroggins
in support of Criminal Complaint                                    12